14-2919-cv
*New York State Citizens' Coalition for Children v. Roberto Velez*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand fifteen.

PRESENT: GUIDO CALABRESI,
DEBRA ANN LIVINGSTON,

*Circuit Judges*.

WILLIAM K. SESSIONS III,*

*District Judge*.

_____

NEW YORK STATE CITIZENS' COALITION FOR CHILDREN,

*Plaintiff-Appellant*,

v.                                                    No. 14-2919-cv

ROBERTO VELEZ, ACTING COMMISSIONER OF THE NEW YORK STATE OFFICE OF CHILDREN & FAMILY SERVICES, IN HIS OFFICIAL CAPACITY,

*Defendant-Appellee*.

_____

FOR APPELLEE:                    ERIC T. SCHNEIDERMAN, Attorney General of the State for New York, BARBARA D. UNDERWOOD, Solicitor General, STEVEN C. WU, Deputy Solicitor General, and JASON HARROW, Assistant Solicitor General of Counsel, New York, N.Y.

* The Honorable William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

FOR APPELLANT: BRIAN R. MATSUI, Washington, D.C., GRANT J. ESPOSITO, and ADAM J. HUNT, New York, N.Y.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the matter is **REMANDED** to the district court for further proceedings.

Plaintiff-Appellant New York State Citizens' Coalition for Children ("Coalition") appeals the July 17, 2014 decision and order of the United States District Court for the Eastern District of New York (Kuntz, *J.*) granting Defendant-Appellee's motion to dismiss. Plaintiff-Appellant Coalition alleges that New York State's basic foster care reimbursement rates do not comply with the Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 670–679c ("CWA"), which the Coalition interprets to require greater funding of state-administered foster care programs. Plaintiff-Appellant seeks declaratory and injunctive relief under 42 U.S.C. § 1983 against Defendant-Appellee Roberto Velez, Acting Commissioner of the New York State Office of Children and Family Services ("Velez"). We presume the parties' familiarity with the facts and procedural history of this case, as well as with the issues on appeal.

We begin with Velez's challenge to the Coalition's standing because standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The elements of the Article III standing requirement are well-established. "[A] plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Ordinarily, an organization like the Coalition can establish Article III standing by (1) showing that its members would have had standing to bring the suit individually, that the suit is

2

"germane to the organization's purpose," and that neither the claim nor relief asserted requires members' participation in the lawsuit, *United Food Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)), or (2) demonstrating injury to itself and seeking judicial relief from that injury, *see, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *NY Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011) (Calabresi, *J.*). When an organization brings suit under 42 U.S.C. § 1983, however, this Circuit has held that it must do so on its own behalf, rather than that of its members. *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) ("It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983 . . . ."). This is because we have "interpret[ed] the rights [42 U.S.C. § 1983] secures to be personal to those purportedly injured." *Id*. (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)). Nevertheless, so long as an organization itself meets the constitutional standing standard spelled out in *Lujan*, it may bring suit under 28 U.S.C. § 1983. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998).

In *Nnebe*, this Court determined that an organization mounting a § 1983 challenge to the automatic suspension of taxi cab drivers after arrest on certain criminal charges had constitutional standing. 644 F.3d at 158. There, the New York Taxi Workers Alliance ("NYTWA") suffered an "opportunity cost" by expending resources toward those legal proceedings that could have been allocated elsewhere. *Id*. at 156–157. While acknowledging the "scant" evidence before it, the *Nnebe* court rejected the argument that the NYTWA's injury was "abstract," adding that an organization need only show "perceptible impairment" of its activities to satisfy the "injury in fact" requirement. *Id.* at 157 (quoting *Ragin v. Harry*

3

*Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))).

In the instant case, Plaintiff-Appellant brought suit "on behalf of its members—licensed foster parents in New York State." A12; *see also* A14 ¶ 4 (reiterating that the Coalition brings this suit "on behalf of its members"). Plaintiff-Appellant's allegations of injury in the district court focused principally on harm to individual foster families. *See, e.g.*, A18 ¶ 20 ("The maximum reimbursement rates, however, are grossly inadequate compared to the actual costs of caring for a child."); A19 ¶ 27 ("New York currently pays less to foster parents to care for a child than a kennel charges to board and feed a dog."); A20–21 ¶ 29 (citing study finding that "as of 2007 New York's reimbursement rates fell woefully short of the CWA's standards."). Granted, Plaintiff-Appellant also asserted in its complaint that it expends significant resources "by sharing information about law, policy, and best practices regarding foster care," and by providing representation to "its members with respect to system-wide issues regarding foster care through legislative and administrative advocacy." A14 ¶ 3.[1] Nonetheless, likely because Defendant-Appellee first raised the present standing argument on appeal, *see* Reply Brief for Plaintiff-Appellant at 22, the district court record does not identify any "perceptible opportunity cost" associated with the New York State foster care program. *Nnebe*, 644 F.3d at 157.

Without more specific allegations as to the "opportunity cost" imposed on the Coalition, we cannot now conclude that the Plaintiff-Appellant has adequately alleged that it has suffered a "perceptible injury" so as to satisfy Article III, but given the breadth of our holding in *Nnebe*, it is possible that it has suffered such an injury. Because this issue was not raised in the district court, however, we conclude that it should be addressed in the first instance there. We therefore

---

[1] The Coalition adds on appeal that "[n]one of these expenditures would be necessary if the State satisfied its obligations to foster children and parents under the CWA." Reply Brief for Plaintiff-Appellant at 23–24.

4

remand in accordance with the procedures of *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), for the district court to address the disputed issue of Article III standing in the first instance, and to conduct any further fact-finding that may be required. We express no view on the question whether if Plaintiff-Appellant establishes standing in the district court, there exists a private right of action that it may assert.

For the reasons stated above, we **REMAND** the case for further proceedings consistent with this order. Upon the conclusion of the proceedings before the district court, either party may restore jurisdiction to this Court by filing with the Clerk within fourteen days of the district court decision a letter (along with a copy of the relevant order or transcript) advising the Clerk that jurisdiction should be restored. In the interest of judicial economy, the renewed appeal will be assigned to this panel.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk