Judge JACOBS dissents in a separate opinion.
BARRINGTON D. PARKER, Circuit Judge:
This appeal requires us to determine whether an ordinance passed by the Town of Oyster Bay to regulate the road-side solicitation of employment complies with the First Amendment. The district court concluded it did not and granted injunctive relief to Plaintiffs-Appellees the Workplace Project (‘Workplace”) and Centro de La Comunidad de Hispana de Locust Valley (“Centro”), two entities that work to advance the interests of day laborers in the area. We affirm.**
In 2009, the Town of Oyster Bay’s board passed an ordinance titled “Solicitation from Streets and Sidewalks Prohibited” (the “Ordinance”), which principally imposed the following restriction:
It shall be unlawful for any person standing within or adjacent to any public right-of-way within the Town of Oyster Bay to stop or attempt to stop any motor vehicle utilizing said public right-of-way for the purpose of soliciting employment of any kina from the occupants of said motor vehicle.
Joint Appendix on Appeal (“App’x”) 466-67.[1] The Ordinance exempts the solicitation of a wide variety of “[sjervice related activities such as taxicabs, limousine service, public transportation vehicles, towing operations, ambulance service and similar uses.” App’x 467.
The Ordinance’s stated objective is to protect residents from “the dangers of ob *108 struction, distraction and delays of traffic caused by the solicitation of employment by pedestrians.” App’x 466. The record reflects that the actual impetus for the Ordinance was a desire to regulate day laborers seeking employment in, Oyster Bay. Specifically, the Town of Oyster Bay sought to restrict the effects of daily gatherings of usually 20-30, but sometimes 50, day laborers soliciting employment along a four-block stretch of Oyster Bay’s Forest Avenue (known as the “Forest Avenue shape-up- site”). At an initial public meeting, Oyster Bay residents complained that the day laborers were causing dangerous, congestive, unhygienic, and unsightly con-ditiong. See App’x 734., At a subsequent public hearing, residents spoke both in favor of and against a proposed version of the Ordinance. Certain residents discussed traffic problems created by the laborers’ solicitation, see App’x 801, while others premised their objections on their views as to the laborers’ immigration status, see App’x 826.
Prior to the Ordinance’s enactment, an investigation was conducted at the direction of Oyster Bay Town Supervisor and Defendant John Venditto. In furtherance of that investigation, Oyster Bay’s Commissioner of Public Safety visited the Forest Avenue shape-up site “between 15 and 20” times, and, among the “numerous and repeated” issues he observed caused by the day laborers’ activities were: (i) automobile and pedestrian traffic^ congestion leading to hazards, delays, and noise disturbance; (ii) 20 to 30 day laborers “swarm[ing]” passing cars; and (iii) impeding and forced re-routing of school busses. App’x 1029-33.
The Ordinance was unanimously adopted by the town board in September 2009. However, it has never been enforced and no person has been charged with violating it. App’x 1035.
In May 2010, Plaintiffs sued the Town of Oyster Bay and Town Supervisor Venditto (together, the “Town”) under 42 U.S.C. § 1983 to enjoin the Ordinance on the ground that it violated the First and Fourteenth Amendments. App’x 128. The District Court found that the Ordinance likely violated the First Amendment and entered á temporary restraining order that was converted into a preliminary injunction. The Town appealed to this Court contending'that Plaintiffs’ members who were subject to the Ordinance were illegal immigrants engaging in illegal speech that was not protected by the First Amendment and, alternatively, that the Ordinance was narrowly tailored and therefore complied with the First Amendment. We affirmed on the ground that the district court had not abused its discretion in converting the temporary restraining order into a preliminary injunction and remanded to the District Court because the record on appeal contained no factual development. Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 420 Fed.Appx. 97 (2d Cir. 2011).
On remand, the Town moved for partial summary judgment on the ground that Centro lacked standing. The court denied the motion, concluding that Centro adequately established that the Ordinance would impose actionable injuries to Centro as an organization. Centro de La Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 954 F.Supp.2d 127, 135-36 (E.D.N.Y. 2013). Subsequently, Plaintiffs moved for summary judgment, which the district court granted. Centro de La Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 128 F.Supp.3d 597 (E.D.N.Y. 2015). That ruling rejected the Town’s argument that Workplace lacked standing, and, after finding that the Ordinance violated the First Amendment, permanently enjoined the Town from enforc *109 ing it. The district court’s basis for finding the Ordinance unconstitutional was that although the Ordinance served a legitimate Town interest, it was insufficiently narrow to serve that interest and consequently could not pass muster under the First Amendment commercial speech framework of Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). This appeal followed.
I
“We review de novo both a district court’s grant of summary judgment and its determination of standing.” Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 79 (2d Cir. 2013). Summary judgment is proper only where “the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as- a matter of law.” Fed, R. Civ. P. 56(a). We must “constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor.” Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).
II
The Town’s main argument on appeal is that Workplace and Centro lack standing because they are essentially disorganized ad-hoc interest groups that aim to vindicate generalized grievances rather than redress concrete and imminent harms. The district court concluded that both organizations have standing to challenge the Ordinance because they both established that enforcement of the Ordinance would pose a “perceptible impairment” to their activities. 954 F.Supp.2d at 134-37 (Centro); 128 F.Supp.3d at 607-09 (Workplace).
We conclude that the district court correctly held that Workplace has standing. Because this conclusion is a sufficient predicate for federal jurisdiction, we are not called on to consider, and therefore do not reach, the question of whether Centro has standing. It is well settled that where, as here, multiple parties seek the same relief, “the presence of one party with standing is sufficient to satisfy Article Ill’s case-or-controversy requirement.” Rumsfeld v. Forum of Acad. and Inst. Rights, Inc., 547 U.S. 47, 52 n.2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006); see also Doe v. Bolton, 410 U.S. 179, 189, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Bowsher v. Synar, 478 U.S. 714, 721, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986).
It is undisputed that Workplace is an incorporated membership organization based in Nassau County, New York, the same county in which Oyster Bay is located. App’x 990. Its mission is to “end the exploitation of Latino immigrant workers on Long Island and to achieve socioeconomic justice by promoting the full political,, economic and cultural participation of those workers in the communities in which they live.” App’x 990. Workplace furthers its mission “with the participation of Latino immigrant workers on Long Island through community organizing, legal support, education, leadership development, and building worker cooperatives.” App’x at 990.
To establish standing, Workplace, as an organization, bore the burden of showing: (i) an imminent “injury in fact” to itself as an organization (rather than to its members) that is “distinct and palpable”; (ii) that its injury is “fairly traceable” to enforcement of the Ordinance; and (iii) that, a favorable .decision would redress its injuries. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); see also Susan B. Anthony List v. Driehaus, — *110 U.S. -, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014) (“The party invoking federal jurisdiction bears the burden of establishing standing” (internal quotation marks omitted)). The Supreme Court has held that an organization establishes an injury-in-fact if it can show that it was “perceptibly impaired” by defendant’s actions. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). Consequently, we have repeatedly held that “only a ‘perceptible impairment’ of an organization’s activities is necessary for there to be an ‘injury in fact.’” Nnebe, 644 F.3d at 157 (quoting Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2d Cir. 1993)); N.Y. Civil Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286, 294 (2d Cir. 2011); N.Y. State Citizens’ Coal. for Children v. Velez, 629 Fed.Appx. 92, 94 (2d Cir. 2015). Moreover, we have held that where, as here, a party seeks review of a prohibition prior to its being enforced, “somewhat relaxed standing” rules apply. Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 689 (2d Cir. 2013).
The Town challenges only the district court’s determination as to the first standing prong, arguing that Workplace failed to establish injuries that were concrete or imminent. We disagree.
A. Workplace Established Concrete Injuries
Workplace asserted that enforcement of the Ordinance will injure it in three ways. First, enforcement will adversely impact its ability to organize day laborers because the Ordinance will necessarily disperse and reduce the number of day laborers gathering in Oyster Bay. Second, enforcement will require Workplace to divert resources from other of its activities to combat the effects of the Ordinance. And third, enforcement will expose its advocates to risk of arrest because those enforcing the Ordinance cannot- differentiate between advocacy activities and the day laborers’ solicitation. Tellingly, the Town essentially concedes that those injuries could confer standing, but argues primarily that Workplace has not shown they have occurred.
But the Supreme Court has been clear that in a pre-enforcement action such as this “the injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.” Davis v. F.E.C., 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). Workplace has met this standard. It presented evidence identifying the concrete and particularized injuries that the Ordinance will impose.
The record demonstrates that Workplace’s activities include traveling to day laborer sites in Oyster Bay to speak with laborers and if the Ordinance achieves one of its principal objectives — disbursement of day laborers — Workplace will inevitably face increased difficulty in meeting with and organizing those laborers. App’x 991. We have held that an organization shows injury-in-fact where, as here, a “policy has impeded, and will continue to impede, the organization’s ability to carry out [its] responsibilities].” N.Y. Civil Liberties Union, 684 F.3d at 295; see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 943 (9th Cir. 2011).
Relatedly, it is also clear that the Ordinance will force Workplace to divert money from its other current activities to advance its established organizational interests (ie., if the laborers are dispersed, it will be more costly to reach them). In fact, Workplace offered unrebutted testimony that it has already had to devote attention, time, and personnel to prepare *111 its response to the Ordinance. App’x 956-57. And, where an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer organizational standing. See Havens Realty Corp., 455 U.S. at 379, 102 S.Ct. 1114 (a “concrete and demonstrable injury to [an] organization’s activities— with the consequent drain on the organization’s resources — constitutes far more than simply a setback to the organization’s abstract social interests”); see also Olsen v. Stark Homes, Inc., 759 F.3d 140, 158 (2d Cir. 2014); Nnebe, 644 F.3d at 157; Ragin, 6 F.3d at 905. Significantly, the Supreme Court has recently reaffirmed Havens Realty's, holding that a nonprofit organization establishes an injury-in-fact-if, as here, it establishes that it “spent money to combat” activity that harms its organization’s core activities. Bank of Am. Corp. v. City of Miami, — U.S. -, 137 S.Ct. 1296, 1303, 197 L.Ed.2d 678 (2017).
Finally, Workplace offered evidence that those responsible for enforcing the Ordinance are likely to confuse the conduct of Workplace’s activists with that of the day laborers. See App’x 727-78 (testimony from a Town law enforcement officer that he is unable to distinguish day laborers from activists in a photo taken at a shape-up site); App’x 958-60 (testimony from Workplace activist that she fears her activism will be mistaken for conduct prohibited by the Ordinance). As the district court concluded, not only might this create a risk of erroneous arrest, it makes it “perceptible that enforcement of the Ordinance would prevent Workplace from engaging in counseling at shape-up sites within the Town and thus impair its advocacy activities.” 128 F.Supp.3d at 609.
As discussed, each of Workplace’s demonstrated injuries are sufficient to constitute an injury-in-fact. In light of these considerations, we conclude that Workplace has shown that the Ordinance threatens the requisite “perceptible impairment” of its activities and thus imposes concrete injuries for purposes of federal jurisdiction.
B. Workplace Established Imminent Injuries
The Town next argues that even if the Ordinance could affect advocates working on behalf of day laborers in the ways Workplace asserts, Workplace has not shown that it will conduct such work within the relevant area of Oyster Bay. Br. of Appellants 33-34. Consequently, according to the Town, any potential injury to Workplace is not imminent. We disagree.
The record establishes that Workplace had substantially more than an imminent intention to engage in the activity that would subject it to the injuries it asserted. Workplace has actively worked in Oyster Bay and actively campaigned against the Ordinance on behalf of its members. This conduct amounted to much more than a “ ‘some day’ intention” or a “vague desire” to engage in the activities that will subject it to its asserted injuries. See Summers v. Earth Island Inst., 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). The case law makes clear that Workplace’s injuries are sufficiently imminent. In Davis, 554 U.S. at 734, 128 S.Ct. 2759, for example, Justice Alito, writing for a majority of the court, held that a political candidate faced injury sufficiently imminent to challenge campaign disclosure requirements by simply declaring his intention to run for office and to spend more than the amount for which disclosure was required. Here, Workplace has done at least as much as what passed muster in Davis and, as a consequence, has established imminent injuries. In sum, Workplace established its standing.
*112 III
We now turn to the constitutionality of the Ordinance under the First Amendment. Our preliminary task is to determine if the Ordinance is even subject to the First Amendment by asking if it restricts speech based on its content. We conclude that the Ordinance is a content-based restriction, specifically, a restriction on commercial speech. So finding, we then assess whether the Ordinance, survives the Central Hudson test applicable to commercial speech restrictions.
The district court, applying Central Hudson, concluded that the Ordinance is a content-based commercial speech restriction that was not narrowly drawn and, as a consequence, violated the First Amendment. Specifically, it concluded that the Ordinance targets speech concerning lawful activity; that the Town’s interest is substantial; that the Ordinance directly advances that interest; but that the Ordinance was not narrowly tailored to serve that interest. See Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343.
We arrive at essentially the same conclusion as the district court. Specifically, we agree that: (i) the Ordinance restricts speech based on its content and is therefore subject th the First Amendment; and (ii) the Ordinance fails the Central Hudson test because it is an overbroad commercial speech prohibition. ■
A. The Ordinance Is a Content-Based Restriction
Workplace is correct that the Ordinance implicates the First Amendment because it restricts speech based on its content. Although the Ordinance has a conduct component — the attempted stopping of a vehicle — the Ordinance only punishes such conduct if done “for the purpose of soliciting employment.” Consequently, Town officials must monitor and evaluate the speech of those stopping or attempting to stop vehicles and they may sanction the speaker only if a suspect says the wrong thing, for example, “hire me” as opposed to “tell me the time.” This' is a content-based restriction and it is well settled that such restrictions implicate the First Amendment. For example, in Police Department of the City of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), the Supreme. Court assessed a city ordinance which prohibited peaceful picketing unless it was aimed at a school labor-management dispute. The Court invalidated the ordinance as content-based because “it describefd] permissible picketing in terms.of its subject matter,” in that, as here, the “operative distinction [between the permissible and impermissible conduct] is the message.” Id.
B. Central Hudson Test for Commercial Speech
The district court correctly concluded that, 'because the Ordinance restricts speech only if it constitutes soliciting of employment, the speech targeted by the Ordinance is commercial speech. It is well 'séttled that speech that is no more than a proposal of possible employment is a “classic example” of commercial speech. Pittsburgh Press Co. v. Pittsburgh Comm’n on Human Relations, 413 U.S. 376, 385, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); see also Maldonado v. Holder, 763 F.3d 155, 173 (2d Cir. 2014) (Lynch, J., dissenting;). Because the Ordinance targets commercial speech, which is afforded less protection than other constitutionally safeguarded forms of expression, it is subject to the Central Hudson analysis, to which we now turn.[2]
*113 In contrast to the strict scrutiny applied to, for example, core political speech restrictions, the Central Hudson test for commercial speech restrictions is a form of intermediate scrutiny. See Safelite Grp., Inc. v. Jepsen, 764 F.3d 258, 261 (2d Cir. 2014). It requires us to ask: (i) if the Ordinance restricts speech that concerns lawful activity; (ii) if the Town’s asserted interest is substantial; (iii) if the Ordinance directly advances that interest; and (iv) if the Ordinance is more extensive than necessary to serve that interest? Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343. The government bears the burden of justifying the restriction. Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 71 n.20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).
i. The Restricted Speech Concerns Lawful Activity
“For commercial speech to come within [the protection of the First Amendment], it at least must concern lawful activity and not be misleading.” Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343. The district court concluded that the speech targeted by the Ordinance — -the solicitation of employment — “is not in and of itself illegal,” and therefore the speech prohibited by the Ordinance is protected by the First Amendment. 128 F.Supp.3d at 614. We too conclude that the Ordinance restricts First Amendment protected speech that “concem[s] lawful activity.”
The Supreme Court has offered guidance on what it means for speech to “concern lawful activity.” Notably, in Pittsburgh Press, it held a prohibition against gender-based placement of help-wanted ads restricted speech that did not concern lawful activity, concluding that the ads were entitled to no First Amendment protection because “[discrimination in employment ... is illegal commercial activity.” 413 U.S. at 388, 93 S.Ct. 2553; see also id. (“We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.”). The basis for stripping such speech of all First Amendment protection was that “the commercial activity itself is illegal.” Id. at 389, 93 S.Ct. 2553. Our cases decided after Pittsburgh Press offer additional clarity.
In Swedenburg v. Kelly, 358 F.3d 223 (2d Cir. 2004), rev’d on unrelated grounds, 544 U.S. 460, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005), we assessed a New York statute prohibiting unlicensed persons from sending into the state “publicationfs] of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages.” Id. at 240. New York law prohibited unlicensed persons from shipping alcohol into' the state, and New York argued that it interprets its prohibition to apply only to the solicitation of such illegal orders. However, we affirmed invalidation of the statute because its “broad language” also restricted the advertisement (and not just solicitation) of alcoholic beverages. Id. at 240-41. Consequently, because the statute could be applied to restrict speech promoting lawful activity, we held the restricted speech “concerns lawful activity” per Central Hudson. Id.
In Alexander v. Cahill, 598 F.3d 79 (2d Cir. 2010), we interpreted the “not be misleading” component of Central Hudson’s first prong. There, we held attorney advertising restrictions that prohibited “potentially misleading ads” were subject to Central Hudson. Id. at 89. We noted that *114 “ ‘States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive.’” Id. at 89 (quoting In re R.M.J., 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982)). Although not addressing Central Hudson's “concem[s] lawful activity” language, Alexander shows that commercial speech is not categorically removed from the First Amendment on a specified basis if that basis is not applicable to all manifestations of the restricted speech. See id. at 90.
The Fourth Circuit’s decision in Educational Media Co. at Virginia Tech, Inc. v. Swecker, 602 F.3d 583 (4th Cir. 2010) is also instructive. To combat underage drinking, Virginia’s Alcoholic Beverage Control Board prohibited “college student publications” from advertising alcoholic beverages. Two student newspapers sued. The Fourth Circuit concluded that the prohibition was a restriction on commercial speech that concerned lawful activity. It concluded as such because even though the newspapers’ readers were primarily under the legal drinking age, the restriction applied to ads that could be viewed by those who were of age:
On its face, § 5-20-40(B)(3) does not restrict commercial speech solely distributed to underage students; rather, it applies to commercial speech that, though primarily intended for underage students, also reaches of-age readers. Therefore, the commercial speech regulated by § 5-20-40(B)(3) concerns lawful activity.
Id. at 589.
The Ninth Circuit has addressed Central Hudson’s “concerns lawful activity” component specifically in the context of a day labor solicitation restriction. Valle Del Sol Inc. v. Whiting, 709 F.3d 808, 821 (9th Cir. 2013). In Valle, the government argued that the speech concerned unlawful activity because the prohibition only applied to solicitation “when associated with the unlawful activity of blocking or impeding traffic.” Id. The Court rejected the argument, and held plaintiffs met their burden of demonstrating that their solicitation concerns lawful activity, “because it is legal to hire or be hired for day labor.” Id.
In sum, the First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would necessarily constitute an illegal act. However, if, as here, there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction “concerns lawful activity” and is therefore protected commercial speech.
The Town argues that because each proposed employment transaction by a day laborer whom the Ordinance targets would be an under-the-table illegal employment arrangement, in violation of immigration, tax, and labor laws, that solicitation of those transactions does not and cannot “concern lawful activity.” Br. of Appellants at 47.
This argument lacks merit. It is without question that the Ordinance could be applied to prohibit speech proposing no illegal transaction. As the district court correctly noted:
[The Ordinance] extends to any individual soliciting employment positioned on property “adjacent to” the Town’s streets and sidewalks — even if that individual does not enter the roadway and is a U.S." citizen, who appropriately discloses all his income to federal, state and local income tax authorities, and is the only person in the immediate area on a lightly traveled road with ample parking spaces for any solicited vehicle to lawful *115 ly pull over. In other words, it reaches speech that is potentially lawful.
128 F.Supp.3d at 615. We are in accord, and, consequently, we conclude that the Ordinance restricts speech concerning lawful activity.
ii. The Town’s Asserted Interest is Substantial
The Town’s asserted interest in the Ordinance “is to protect the health, safety and welfare of motorists and pedestrians using public rights-of-way in the Town of Oyster Bay from the traffic and other dangers brought about by street side solicitation.” Dkt. 10-cv-02262, No. 132-1 at 32 (S.D.N.Y. Dec. 1, 2014). This interest is substantial under Central Hudson. See, e.g., Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).
iii. The Ordinance Directly Advances That Interest
The third step of Central Hudson concerns the relationship between the harm underlying the Town’s interest and the means identified by the Town to advance that interest. Greater New Orleans Broad. Ass’n v. United States, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) cautions that the speech restriction must “directly and materially advance[] the asserted government interest.” For good reason, this prong is largely unchallenged by Workplace. Clearly, prohibiting individuals from stopping traffic to seek employment furthers the interest of traffic and pedestrian safety. Moreover, the Town offered evidence of the hazards caused by laborers’ congregation at the Forest Avenue shape-up site. Although the Ordinance may be underinclusive, “in the commercial speech context, the Supreme Court has made clear that underinclusiveness will not necessarily defeat a claim that a state interest has been materially advanced.” Anderson v. Treadwell, 294 F.3d 453, 463 (2d Cir. 2002).
iv.The Ordinance is Not Narrowly Drawn
Under Central Hudson’s fourth prong, the Town bore the burden of establishing that the Ordinance is “narrowly drawn to further the interests served.” United States v. Caronia, 703 F.3d 149, 167 (2d Cir. 2012). The Town did not have to show that it chose the least restrictive means of advancing its asserted interests, nor that there was no conceivable alternative. Rather, its obligation was to establish that the regulation not burden substantially more speech than necessary to further its legitimate interests. Safelite Grp., Inc., 764 F.3d at 265; Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 104 (2d Cir. 2010).
The district court correctly concluded that the Town failed to meet this obligation. It held that the Ordinance is' “extremely far-reaching,” in that it prohibits speech that “pose[s] [no] threat to safety on the Town’s streets and sidewalks.” 128 F.Supp.3d at 618. It then found that the Town had available to it “less burdensome alternatives available to address street and sidewalk safety,” citing to numerous state and local public safety laws. Id. at 619-20. On those bases, the district court concluded that the Ordinance fails Central Hudson’s fourth prong. We agree.
The Ordinance does not require any connection between the prohibited speech— solicitation of employment — and the asserted interest — traffic and pedestrian safety. There are numerous ways in which an individual, “adjacent to any public right-of-way,” might “attempt to stop [a] motor vehicle utilizing said public right-of-way for the purpose of soliciting employment” that would cause no threat whatever *116 to public safety. The district court-offered several apt examples:
[The Ordinance] reaches a lone person standing on the sidewalk, away from the curb, who attempts to make known to the occupants of vehicles his availability for work even if it does not result in a car stopping in traffic or double parking. It reaches children selling lemonade at the end of a neighbor’s driveway (which is, after all, “adjacent to” a public right of way), the veteran holding a sign on a sidewalk stating “will work for food,” and students standing on the side of a road advertising a school carwash. Even a person standing on the sidewalk holding a sign “looking for work — park at the curb if you are interested in hiring me” would violate the ordinance as it contains no specific intent element and no requirement that the “attempt to stop” result in traffic congestion, the obstruction of other vehicles, or double parking.
Id. at 618.
The Town argues at the outset that this reasoning by the district court was faulty because it erroneously assessed the impact of the Ordinance on individuals not before the court (ie., day laborers or lemonade stand vendors). Specifically, the Town posits that because Workplace only established organizational (rather than representational) standing, it was . error for the district court to- evaluate the impact of the Ordinance on anyone but Workplace as an organization. See Br. of Appellants at 6-7 (describing this as a “bait-and-switch”). The Town’s argument appears to depend on the'principle announced in Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), that it “is irrelevant whether [an] ordinance has an overbroad scope encompassing protected commercial speech of other persons, because the overbreadth doctrine does not apply to commercial speech.”
This argument fails because the Supreme Court has been clear that overbreadth challenges to commercial speech restrictions may be' brought if the prohibition “reach[es] some noncommercial speech.” Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 482, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Here, it is without question that Workplace’s activities impacted by the Ordinance constitute core First Amendment activity. See Vill. of Schaumburg v. Citizens for a Better Env't., 444 U.S. 620, 632, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (basic First Amendment activities include “communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes”); see also N.A.A.C.P. v. State of Ala. ex rel. Patterson, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (First Amendment activities of advocacy groups are particularly sensitive “where a group espouses dissident beliefs”). Because of the Town’s restriction on commercial speech, Workplace’s ability to engage in those core First Amendment activities will be directly and adversely impacted in the manners we previously described, supra 109-12. Accordingly, the Ordinance clearly “reach[es] some noncommercial speech,” and the district court was free to assess its broader impact on hypothetical individuals.[3] And we agree with the district court that the *117 Ordinance’s impact on the commercial speech of those hypothetical individuals is too broad to survive Central Hudson.
We also find it significant that the Ordinance does not apply to the most common forms of solicitation involving the stopping of vehicles on public rights of way, such as the hailing of a taxi or a public bus. These exemptions strongly suggest that in the great majority of situations, stopping a vehicle on a public right of way creates no inherent safety issue. Entirely prohibiting one speech-based subset of an activity that is not inherently disruptive raises the question whether the Town’s actual motivation was to prevent speech having a particular content, rather than address an actual traffic and pedestrian congestion issue. See Glickman v. Wileman Bros. & Elliott, Inc., 521 U.S. 457, 493, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997) (Souter, J. dissenting) (“ ‘[Exemptions and inconsistencies’ in alcohol labeling ban ‘bring into question the purpose of the ... ban,’ such that it does not survive the Central Hudson test”) (quoting Rubin v. Coors Brewing Co., 514 U.S. 476, 489, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995)); The Florida Star v. B.J.F., 491 U.S. 524, 540, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) (“[T]he facial un-derinclusiveness of § 794.03 raises serious doubts about whether Florida is, in fact, serving, -with this statute, the significant interests which appellee invokes.”). And, as discussed below, it is relevant to the “narrowly drawn” analysis if the" Town was principally motivated in restricting a particular category of speech, rather than the “traffic safety” interests it has asserted.
The Town responds by arguihg that the Ordinance is narrowly drawn despite its broad exemptions because the Ordinance is aimed at the specific situation at the Forest Avenue shape-up site, which, unlike a singular taxi hailer for example, involves large numbers of people gathered, in groups to stop cars. But the Ordinance does not limit solicitation of employment when done in large groups, it broadly extends to all types- of solicitation. Therefore, the Ordinance is not “narrowly drawn.”
Finally, it is an “important consideration” to the “narrowly drawn” requirement if there existed “numerous and obvious less-burdensome alternatives to the restriction on commercial speech” Florida Bar v. Went For It, Inc., 515 U.S. 618, 632, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). The district court cited to “a number of less burdensome alternatives' to address street and sidewalk safety.” 128 F.Supp.3d at 619. As one notable example, Section 173-4 of the Town’s Code prohibits a “solicitor” from (i) “occupying] any stationary location in any street or any public property”; or (ii) “soliciting] in any congested place or an area when or where such activity may impede or inconvenience the public or add to the congestion of such place or area.” Section 173-4 is probative not only because it is an example of a less content-based tool than the Ordinance to stop the precise harm the Town claims motivated the Ordinance; It also demonstrates how the Town could have drawn the' Ordinance' such that it would advance 'its asserted interest while limiting the impact ón constitutionally'protected speech by tying the prohibition to a manifestation of the harm sought to be avoided.
The Town argues that the regulations identified by the district court do “not address the full panoply of dangers that have arisen and are concomitant with a bustling street-side labor market.” Br. of Appellants at 60. Even assuming, arguen-4o, this to be true, it is of no moment. The Ordinance does not prohibit a “bustling *118 street-side labor market”; it broadly prohibits any attempt to stop a vehicle to solicit employment anywhere in Oyster Bay irrespective of its effect.
It is therefore clear that the Ordinance simply adds a speech-based component to an already existing prohibition. This is another indication that the principal interest the Town aimed to serve was the suppression of that particular speech, rather than the interests in traffic and pedestrian safety that it asserted before the district court. We refuse to conclude that the Ordinance is narrowly drawn where it broadly impacts protected speech and only narrowly addresses the Town’s stated interest. In Edenfield v. Fane, 507 U.S. 761, 768, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), the Court cautioned that under Central Hudson, courts should not “turn away if it appears that the stated interests are not the actual interests served by the restriction.”
For these reasons, we conclude that the district court correctly held that the Ordinance is an unconstitutional restriction of commercial speech in violation of the First Amendment.
Finally, we note that the dissent faults us for affirming the invalidation of the entire Ordinance, including subdivision D, rather than severing subdivision C. Dissenting op. at 124-25. This contention is the exclusive concern of our dissenting colleague, not of the parties. Plaintiffs have sought invalidation of the entire Ordinance since the inception of this litigation. During the seven years that this litigation has been pending, the Town has never raised the prospect of severing the Ordinance, not in its pleadings, not during extensive summary judgment proceedings, and not in the two appeals taken to this Court. If the Town wanted severance as an alternative remedy it, presumably, would have said so. In any event, the law is well settled that arguments as to severability are waived where, as here, a party fails to raise the issue. See, e.g., Redondo Beach, 657 F.3d at 951 n.10; Bishop v. Smith, 760 F.3d 1070, 1095 (10th Cir. 2014); Lozano v. City of Hazleton, 620 F.3d 170, 182 & n.13 (3d Cir. 2010), rev’d on irrelevant grounds, 563 U.S. 1030, 131 S.Ct. 2958, 180 L.Ed.2d 243 (2011); Telecomm’s Reg. Bd. of Puerto Rico v. CTIA-Wireless Ass’n, 752 F.3d 60, 62 n.2 (1st Cir. 2014).
CONCLUSION
The judgment of the district court is AFFIRMED.

 Also on appeal is the district court’s entry of a protective order, which we resolve in a summary order issued simultaneously with this opinion.

. Except as otherwise noted, the facts recounted here are undisputed.

. Workplace argues that the speech restricted by .the Ordinance is "ideological advocacy *113 and political speech,” rather than commercial speech. Br. of Appellees at 19-24. Because we conclude that the Ordinance fails even assuming the restricted speech is commercial speech, which is "affordfed] less protection” than political speech, Connecticut Bar Association v. United States, 620 F.3d 81, 93 (2d Cir. 2010), we need not resolve this question.

. That the Ordinance adversely impacts certain, core First Amendment activity does not remove the Ordinance from the less-strict review of our commercihl speech jurisprudence. A commercial speech prohibition that leads to coincident "restrictions on expressive speech,” is still assessed under commercial speech doctrine if the restrictions on expression “properly are characterized as incidental to the primary congressional purpose of” the prohibition. S.F. Arts & Athletics, Inc. v. U.S. *117 Olympic Comm., 483 U.S. 522, 536-37, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987).