24-382-cv
*Farm Sanctuary v. United States Department of Agriculture*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand twenty-six.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

FARM SANCTUARY, ANIMAL EQUALITY, ANIMAL OUTLOOK,

> *Plaintiffs-Appellants*,

> v.                                                          24-382-cv

UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD SAFETY INSPECTION SERVICE,

> *Defendants-Appellees*.*

---

| | |
|---|---|
| For Plaintiffs-Appellants: | PIPER HOFFMAN (Jareb Gleckel, *on the brief*), Animal Outlook, Washington, DC. |
| For Defendant-Appellee: | STEVEN H. HAZEL (Yaakov M. Roth, Michael DiGiacomo, Thomas Pulham, and Benjamin M. |

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Shultz, *on the brief*), United States Department of Justice, Washington, DC; Brigham J. Bowen, United States Department of Agriculture, Washington, DC.

Appeal from a judgment of the United States District Court for the Western District of New York (Elizabeth A. Wolford, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Farm Sanctuary, Animal Equality, and Animal Outlook appeal from a judgment of the United States District Court for the Western District of New York, entered on December 13, 2023, granting summary judgment in favor of Defendants-Appellees the United States Department of Agriculture ("USDA") and its component, the Food Safety Inspection Service ("FSIS").

Plaintiffs are three "nonprofit organizations working to protect animals, people, and environments from industrial animal agriculture, and to ensure that laws intended to regulate industrial agriculture are properly implemented." Special App'x 1. Plaintiffs filed suit to challenge the USDA's and the FSIS's adoption by rule of the New Swine Inspection System ("NSIS"). *See* 84 Fed. Reg. 52300, 52345 (amending 9 C.F.R. Part 309). In their amended complaint, Plaintiffs argued that the portion of the NSIS that revised the antemortem inspection practices for pigs at participating slaughterhouses, 9 C.F.R. § 309.19, violates portions of the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601-695, the Humane Methods of Slaughter Act ("HMSA"), 7 U.S.C. §§ 1901-1907, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Plaintiffs take issue primarily with the section of the NSIS that allows slaughterhouse employees to conduct an antemortem pre-sorting of pigs eligible for slaughter and to dispose of "unfit" pigs before they can be inspected by a USDA-trained inspector.

2

Defendants moved to dismiss the amended complaint for lack of jurisdiction, arguing that Plaintiffs failed to allege an injury and therefore did not have standing to bring this suit. The district court denied the motion. Upon completion of discovery, the parties filed cross-motions for summary judgment. After the court reviewed the parties' positions set forth in their respective summary judgment motions, it ordered supplemental briefing on the issue of standing. Thereafter, in an opinion granting Defendants' summary judgment motion, the district court held that Plaintiffs had organizational standing, but it did not reach the question of associational standing. The district court proceeded to reject on the merits Plaintiffs' contentions that the NSIS violated the FMIA, the HMSA, and the APA. On appeal, Plaintiffs reassert their claims that the NSIS violates various sections of those three laws. We assume the parties' familiarity with the case.

Before reaching the merits, this Court must first resolve the threshold issue of whether Plaintiffs have standing. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019).[1] We review *de novo* a district court's determination of standing. *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "A proper case or controversy exists only when at least one plaintiff establishes that she has standing to sue." *Id.* at 57. To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

"An organization can have standing to sue in one of two ways." *N.Y.C.L. Union v. N.Y.C Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Under the theory of organizational standing, organizations may "sue on their own behalf for injuries they have sustained," *All. for Hippocratic Med.*, 602 U.S. at 393, so long as they demonstrate that they were "directly injured as an organization," *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). An organization may also sue on behalf of a member—that is, assert associational standing—if it shows "that some particular member of the organization would have had standing to bring the suit individually." *N.Y.C. Transit Auth.*, 684 F.3d at 294. Plaintiffs Farm Sanctuary, Animal Equality, and Animal Outlook all contend that they have organizational standing, and Farm Sanctuary asserts that it also has associational standing on behalf of one of its members. For the reasons that follow, we disagree.

## I.    Plaintiffs Lack Organizational Standing

Plaintiffs assert that the NSIS's adoption has had "involuntary and material impacts on [their] core activities," *Conn. Parents Union*, 8 F.4th at 174-75 (emphasis omitted), by frustrating their missions and forcing them to divert resources. Farm Sanctuary rescues farm animals and coordinates their "placement at and transportation to other sanctuaries." App'x 76. Farm Sanctuary alleges that the NSIS will increase its expenditures by increasing the number of pigs that it will need "to find placement, and provide transport and care for." App'x 78. Animal Equality conducts corporate engagement, training, and education to encourage companies to "implement policies and increase standards to benefit the animals in their supply chains" in order to "garner consumer goodwill." App'x 88, 93. Animal Equality claims that the NSIS will force it to "incur significant costs" to overhaul its corporate engagement programs, re-train its volunteers, and develop new education materials. *Id.* Animal Outlook aims to protect non-ambulatory

4

animals through litigation, investigation, and public education. App'x 60-61. And Animal Outlook alleges that the NSIS's changes will cause it to lose access to information on which it relies for its advocacy work—that is, the information on which it relies to advance its social interests and to advocate against government policies it disfavors. App'x 65-66. All of these alleged injuries to Plaintiffs involve voluntary expenditures to advocate against policies embodied in the NSIS or the diversion of resources from other aspects of their missions to rescue pigs they allege will be affected by these new policies.

Both the Supreme Court and this Court have held that these types of injuries—the diversion of an organization's resources or frustration of its mission—are inadequate to establish standing. In *Alliance for Hippocratic Medicine*, the Supreme Court held that "incurring costs to oppose [an agency's] actions" is not a "concrete injury." 602 U.S. at 394. Similarly, it rejected the existence of standing "simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Id.* Put differently, the Court held that a "plaintiff must show far more than simply a setback to the organization's abstract social interests" to establish an injury and therefore standing. *Id.* Relying on *Alliance for Hippocratic Medicine*, this Court recently reaffirmed the principle that a plaintiff "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 167 F.4th 605, 619 (2d Cir. 2026). Because binding precedent forecloses the possibility that an organization may "manufacture its own standing," *All. for Hippocratic Med.*, 602 U.S. at 394, Plaintiffs have failed to allege a concrete injury, and therefore, organizational standing.

5

## II.    Plaintiff Farm Sanctuary Lacks Associational Standing

Alone among the Plaintiffs, Farm Sanctuary also argues that it has associational standing, which requires that (among other things) at least one of its members have "standing to sue in their own right." *Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021). To make this showing, Farm Sanctuary must demonstrate that its member has suffered an injury-in-fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court has explained that the "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id.* Farm Sanctuary relies on a sworn declaration provided by its member David Washburn, who is both a consumer of pork products and a professional chef at a college dining hall who prepares and serves pork products. Washburn averred that he is "concerned that potentially faster line speeds, privately conducted inspections, and a reduced number of FSIS inspectors on the line will increase the likelihood that I may contract foodborne illnesses from contaminated pork and that I may expose others to such illnesses." App'x 69.

Fatal to Farm Sanctuary's purported associational standing, the record lacks any indication that Washburn faces an injury that is actual or imminent. To be sure, in *Baur v. Veneman*, we held that an individual plaintiff's "allegation that he faces an increased risk of contracting a food-borne illness from the consumption of downed livestock constitutes a cognizable injury-in-fact for Article III standing purposes." 352 F.3d 625, 631 (2d Cir. 2003). That type of heightened risk can qualify as an injury-in-fact. But, as *Clapper* reminds us, a plaintiff must also allege facts showing that such a risk is actual or imminent. That is, a complaint must set forth facts establishing

6

a "direct risk of harm which rises above mere conjecture," *id.* at 636, not merely a "speculative risk of disease transmission from downed livestock," *id.* at 633.

In *Baur*, there were "two critical factors" that made the plaintiff's injury-in-fact concrete and not merely speculative: the purported injury was attributable to an established government policy, and there were government studies and statements confirming the plaintiff's key allegations. *Id.* at 637. Although Farm Sanctuary has alleged that the purported harm to Washburn arises from an established government policy—that is, NSIS—noticeably missing from its allegations are concrete facts (such as the government studies and statements involved in *Baur*) that confirm the existence of the risks Washburn claims he will face. Without such corroboration, the risk of disease transmission from pigs at the NSIS slaughterhouses to Washburn is too speculative to support his standing in this case. For Washburn to suffer the injury that he alleges from consuming contaminated pork, a highly conjectural and attenuated chain of events would need to occur. This would entail, for example: (1) an increased number of slaughterhouses adopting the NSIS's new antemortem presorting procedures; (2) a diseased pig entering a slaughterhouse that has implemented the NSIS; (3) the slaughterhouse's antemortem presorting under the NSIS leaving more contaminated pork to be inspected by USDA inspectors; (4) the USDA inspectors missing the contaminated pork during their inspections; (5) the contaminated pork entering into the food supply; and (6) Washburn contracting an illness from the contaminated pork. Even more remote is the possibility that Washburn would suffer an injury from serving contaminated pork to others; in addition to the attenuated chain of events above, one of the dining hall patrons would need to consume the contaminated pork, contract a foodborne illness, and then Washburn would have to suffer a consequence from that consumer's illness (say, being sued or fired). Such "speculative chain[s] of possibilities do[] not establish that injury based on potential

7

future [foodborne illness] [are] certainly impending or [] fairly traceable" to the NSIS. *Clapper*, 568 U.S. at 414; *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 915-17 (D.C. Cir. 2015) (holding that consumers lacked standing to challenge the similar New Poultry Inspection System because the consumers did not "allege that there is a *substantially increased risk* of foodborne illness" without relying on speculation). Because "[i]t is not sufficient to speculate that a traceable injury might happen some day," *Doe v. Hochul*, 139 F.4th 165, 187 (2d Cir. 2025), Farm Sanctuary has failed to demonstrate an injury-in-fact on the part of Washburn that is sufficient to accord him standing. Farm Sanctuary therefore does not, in turn, have associational standing based on Washburn's allegations.

\* \* \*

Because Plaintiffs do not have standing, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

8