12-2915-cv
Robinson Brog Leinwand Greene Genovese & Gluck, P.C. v. John M. O'Quinn & Assocs., L.L.P.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand and thirteen.

Present:
> PETER W. HALL,
> DENNY CHIN,
> > *Circuit Judges,*
>
> JANE A. RESTANI[*],
> > *Judge.*

_____

Robinson Brog Leinwand Greene Genovese & Gluck P.C.,

> Plaintiff-Appellant,

v.                                                             No. 12-2915-cv

John M. O'Quinn & Associates, L.L.P., d/b/a The O'Quinn Law Firm,

> Defendant-Appellee.

_____

[*] The Honorable Jane A. Restani of the United States Court of International Trade sitting by designation.

1

FOR APPELLANT:   FELICIA S. ENNIS (Alan M. Pollack, *on the brief*) of Robinson Brog Leinwand Greene Genovese & Gluck P.C., New York, New York.

FOR APPELLEE:    KENNETH R. BREITBEIL (Norma N. Bennett, *on the brief*) of McFall, Breitbeil & Smith, P.C., Houston, Texas, and Evan Mandel of Mandel Bhandari LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*).  UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-Appellant Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog") appeals from the judgment of the United States District Court for the Southern District of New York dismissing its claims for breach of contract, promissory estoppel, quantum meruit, breach of implied contract, unjust enrichment, negligent misrepresentation, and equitable estoppel on the grounds that these claims all must be arbitrated as held in the district court's Opinion and Order dated July 10, 2012.  Robinson Brog argues that it should not be required to submit to arbitration because:  (1) there is no arbitration provision contained in the joint representation agreement it signed; (2) its claims are not within the scope of the arbitration clause contained in the Power of Attorney and Contingency Fee Contract ("Client Agreement") and subsequent Amendment to Power of Attorney and Contingency Fee Contract ("Amendment") because it did not sign those agreements; and (3) direct benefits estoppel does not apply to compel arbitration because it seeks to enforce its claims against John M. O'Quinn & Associates, L.L.P. ("O'Quinn Firm") solely under the provisions of their joint representation agreement, which does not contain an agreement to arbitrate.  We assume the parties' familiarity

2

with the facts and procedural history of the case, referencing them only as necessary to explain our decision.

Robinson Brog, the O'Quinn Firm, and Christian, Smith & Jewell, L.L.P. ("CS&J") agreed to represent jointly a group of investors and shareholders of Escala Group, Inc. ("Escala clients") on a contingency fee basis in a potential stock fraud and manipulation case. The firms agreed that the O'Quinn Firm would provide funding for the litigation and that CS&J and Robinson Brog would handle the majority of the day-to-day legal work. Three documents defined the terms of the engagement in the Escala litigation: (1) the Client Agreement detailed the attorney-client relationship, set the 50% contingency fee rate, memorialized the clients' promise to pay those fees and to cover expenses, and required that all disputes be submitted to arbitration; (2) the Joint Responsibility Referral Fee Letter Agreement ("Joint Agreement") provided that the three firms would jointly prosecute the Escala litigation and specified how they would share attorneys' fees; and (3) the Consent to Refer Document ("Client Consent") informed the clients that Robinson Brog would formally join in providing legal representation and stated the terms of the fee splitting arrangement among the law firms. Robinson Brog now seeks to recover from the O'Quinn Firm attorneys' fees and expenses for Robinson Brog's work on behalf of the Escala clients in the amount of $15,000 in expenses and either $12,500,000 in attorneys' fees based on an expected recovery, or $385,000 in actual attorneys' fees.

We review the enforceability of an arbitration clause *de novo*. *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 147 (2d Cir. 2004). State law contract principles govern whether there is an enforceable arbitration agreement under the Federal Arbitration Act ("FAA"). *See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 295 (2d Cir. 1999). We need not decide what law determines the issue of whether a non-signatory

party should be required to submit its claims to arbitration, as the parties agree that Texas law applies and Texas follows this circuit's precedent on the issue. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (citing *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Fisser v. Int'l Bank*, 282 F.2d 231, 233 (2d Cir. 1960). A non-signatory may be bound by an arbitration clause when it has "knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC,* 268 F.3d 58, 61 (2d Cir.2001) (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir.1993)); *see also Kellog*, 166 S.W.3d at 739–40.

When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from "denying its obligation to arbitrate." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *see also Kellog*, 166 S.W.3d at 739–40. With respect to Robinson Brog's claims, only by virtue of the Client Agreement, the Client Consent, and the Joint Agreement functioning together is there even a basis for generating a potential recovery, and only from such recovery may Robinson Brog be paid its attorneys' fees and expenses. In that respect, the Client Agreement, by establishing the attorney-client relationship between the plaintiffs and the law firms, is the foundation of these interdependent documents. Without a client to represent, there could be no net settlement or recovery and thus no basis for distributing attorneys' fees. Robinson Brog argues the sole source of its entitlement to a recovery is the Joint Agreement. That Agreement, however, while apportioning among the respective firms the attorneys' fees that could be paid, does not contain an independent means of generating the pool of funds from which those fees would be paid. Notwithstanding its efforts to assert otherwise, Robinson Brog cannot limit the basis for its claims only to the Joint Agreement

4

but necessarily invokes the clients' agreement to pay fees and reimburse expenses embodied in the Client Agreement. Robinson Brog may not seek to benefit from the portion of the Client Agreement that creates the pool of funds for payment of attorneys' fees without also subjecting itself to the arbitration clause contained in that same agreement.

Robinson Brog argues in the alternative that even if it were bound to the Client Agreement's arbitration clause, this dispute falls outside the scope of the arbitration clause because Robinson Brog's claims are not based directly on, but are merely related to, the Client Agreement. Under the Federal Arbitration Act ("FAA"), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, (1983). The arbitration clause in the Client Agreement and subsequent Amendment applies to "[a]ny and all disputes, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by Attorneys to Client or (4) the relationship between Attorneys and Client." This language is typical of broad arbitration provisions encompassing any disputes that touch matters covered by the contract in which the arbitration provision is found. *See ACE Capital Re Overseas Ltd. v. Central United Life Ins.Co.*, 307 F.3d 24, 33–34 (2d Cir. 2002). Applying the traditional presumption of arbitrability to such broadly worded clauses and considering the interrelation of the three agreements in this case, we conclude that the arbitration clause covers this dispute. The Joint Agreement's mechanism to apportion attorneys' fees is dependent on generating a net settlement or recovery through the Client Agreement. Without the Client Agreement, there are no clients to represent or attorneys' fees to recover. If Robinson Brog seeks to recover under the Joint Agreement, its claims are necessarily related to the Client Agreement and the arbitration provision in that agreement applies.

5

We have considered all of Robinson Brog's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk