B. Plaintiff WDOMI
According to Defendant, Plaintiff WDOMI lacks associational or organizational standing to file this action. (Def.'s Mot. pp. 13 - 18.)
1. Associational Standing
An organization has associational standing if it can show that (1) its members would have standing to sue in their own right; (2) the interests it seeks to protect relate to the organization's purpose; and (3) neither the asserted claim nor the requested relief require the participation *257 of individual members of the lawsuit. Hunt v. Wash. State Apple Advert. Comm'n , 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
Plaintiffs' Amended Complaint establishes the first element; its members would have standing to sue in their own right. Members of Plaintiff WDOMI, like Plaintiff Lowell, "rely on compliance by public accommodations, including transportation services, with local, state, and federal [accessibility] disability laws" and have been deterred from using Defendant's transportation services because of Defendant's failure to comply with these laws. (Compl. ¶¶ 31, 116, 120 & 127.) Requiring Defendant to comply with accessibility laws would redress this injury. (Id. p. 28); See Reed v. 1-800-Flowers.com , 327 F.Supp.3d 539, 550 (E.D.N.Y. 2018). Thus, because the Amended Complaint contains sufficient facts to support a plausible claim that members of Plaintiff WDOMI suffered an concrete and particularized injury, fairly traceable to Defendant's conduct and able to be redressed by the Court, the Court is satisfied that they WDOMI members would independently have standing.
Plaintiff WDOMI easily satisfies the second element of associational standing. The interests it seeks to protect through this lawsuit, equal and accessible access to transportation public accommodations, fall squarely within its purpose. "A key component of WDOMI's mission is ensuring that people with mobility disabilities are able to effectively use the transportation services they require." (Compl. ¶ 21.)
However, Plaintiff WDOMI does not establish the third element for its NYSHRL and NYCHRL claims; it fails to plausibly show that neither Plaintiff WDOMI's claim nor the relief requested requires the participation of WDOMI's members. "[W]here the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the Hunt test may be satisfied." Bano v. Union Carbide Corp. , 361 F.3d 696, 714 (2d Cir. 2004). In Hunt , the Supreme Court found that neither the interstate commerce claim nor the requests for declaratory or injunctive relief required individualized proof and held that both claims were properly resolved "in a group context." Hunt , 432 U.S. at 344, 97 S.Ct. 2434. Here, unlike the Plaintiffs in Hunt , Plaintiffs request compensatory damages in addition to declaratory and injunctive relief for their NYSHRL and NYCHRL claims. (Compl. ¶ 25.) A request for compensatory damages, such as the request in Plaintiffs' Amended Complaint, requires the participation of a group's individual members. Irish Lesbian and Gay Org. v. Giuliani , 143 F.3d 638, 651 (2d Cir. 1998).
Accordingly, Plaintiff WDOMI does not have associational standing for its NYSHRL and NYCHRL claims because it fails to satisfy the third prong of the associational standing analysis for those claims.
2. Organizational Standing
To have organizational standing, an organization must establish that there is (1) an imminent injury "to itself as an organization (rather than to its members) that is 'distinct and palpable' "; (2) the injury is fairly traceable to the defendant's actions; and (3) the court can redress the injury. Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay , 868 F.3d 104, 109 (2d Cir. 2017). For organizational standing, an organization is "just another person-albeit a legal person-seeking to vindicate a right." N.Y. Civil Liberties Union v. N.Y. City Transit Auth. , 684 F.3d 286, 294 (2d Cir. 2012).
Here, Plaintiff WDOMI fails to satisfy the first element, an injury to itself as an organization. Plaintiff WDOMI states that *258 it is injured because it must divert resources to advocate "for its constituents who are harmed by Lyft's discriminatory policies and practices." (Compl. ¶ 22.) This injury is not distinct from the matter before the Court. Rather, Plaintiff WDOMI's stated injury results from WDOMI's efforts to pursue this very lawsuit. In Havens Realty Corp. v. Coleman , the Supreme Court held that "concrete and demonstrable injury to an organization's activities-with the consequent drain on the organization's resources-constitutes far more than simply a setback to the organization's abstract social interests" and that such an injury could be sufficient to establish organizational standing. 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). However, lower courts disagree about how broadly Havens should be applied.
The circuit courts are split on whether litigation expenses alone is an injury sufficient to support organizational standing. See Citizens for Responsibility and Ethics in Wash. v. Trump , 276 F.Supp.3d 174, 192 (S.D.N.Y. 2017). Some circuit courts hold that the expenditure of resources for litigation is insufficient to confer standing. People for the Ethical Treatment of Animals v. U.S. Dept. of Agric. , 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("[A]n organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing."); Blunt v. Lower Merion Sch. Dist. , 767 F.3d 247, 285 (3d Cir. 2014) (holding that organizations do not satisfy the injury-in-fact requirement of standing by "making expenditures solely for the purpose of litigation"). Other circuit courts adopt a broader interpretation of Havens and hold that diversion of resources from core organizational activities to litigation challenging a defendant's conduct is a sufficient injury for organizational standing so long as the injury is concrete. See N.A.A.C.P. v. City of Kyle , 626 F.3d 233, 239 (5th Cir. 2010) (holding that an organization's alleged injury, examining developments in local zoning ordinances, was "simply a setback to the organization's abstract social interests" and not a diversion of resources sufficient to show a concrete injury); Ragin v. Harry Macklowe Real Estate Co. , 6 F.3d 898, 905 (2d Cir. 1993). In Ragin , an organization challenged the use of only white models in advertisements for housing and alleged that it sustained an injury because the defendant's actions forced the organization to identify and counteract the defendant's advertising practices. Ragin , 6 F.3d at 901. The Second Circuit agreed and held that the organization had an injury sufficient to support organizational standing. Id. at 905.
After Ragin , some courts in this Circuit have found standing where a defendant's conduct interferes with or otherwise burdens an organization's ability to pursue its usual activities. See Centro de la Comunidad Hispana de Locust Valley , 868 F.3d at 110 ; N.Y. Civil Liberties Union , 684 F.3d at 295. Other courts have extended Havens further and held that an organization has standing when it is forced to "expend resources to prevent some adverse or harmful consequence on a well-defined and particularized class of individuals." See Olsen v. Stark Homes, Inc. , 759 F.3d 140, 158 (2d Cir. 2014) ; Citizens for Responsibility and Ethics in Wash. , 276 F.Supp.3d at 190 (holding that the organization, interested in protecting citizens' rights to be informed of government activity, did not have standing because it made the choice to challenge the defendant's actions and was not attempting to prevent or reverse adverse effects). In Olsen , Long Island Housing Services ("LIHS"), along with *259 other plaintiffs, claimed that the defendant discriminated against individuals based on their disabilities in violation of the Fair Housing Act. Olsen , 759 F.3d at 143. To determine whether the defendant's actions were discriminatory in violation of the Fair Housing Act, LIHS sent testers to the defendant's facility. Id. at 143 - 44. LIHS then submitted administrative complaints, based on information from the testers, to the Department of Housing and Urban Development. Id. at 144. These complaints were submitted before the plaintiffs commenced their suit against the defendant in federal court. Id. The court held that LIHS's allegations that it expended resources by sending testers to the defendant was a concrete and particularized injury. Id. at 158.
Here, Plaintiff WDOMI fails to plausibly allege that it sustained an injury sufficient to support organizational standing. Unlike LIHS in Olsen , Plaintiff WDOMI does not allege that Defendant's conduct caused it to expend any resources separate from this litigation or that it was otherwise impeded in its ability to pursue its mission. There is no indication in the Amended Complaint that Defendant WDOMI conducted any sort of investigation or otherwise expended resources because of Defendant's conduct at issue before this action. Plaintiff WDOMI claims that it suffered injury "in the form of diversion of [its] resources and frustration of its mission," but this allegation is conclusory and unsupported by any facts in the Amended Complaint. (Compl. ¶ 22.) The Amended Complaint does not include any facts, beyond the aforementioned conclusory allegation, to plausibly support that Defendant's conduct interfered WDOMI's ability to pursue its mission or that it was forced to divert resources to prevent an adverse consequence, like LIHS in Olsen. Thus, Plaintiff WDOMI fails to establish an injury to itself as an organization, the first element of organizational standing.
Thus, because Plaintiff WDOMI cannot satisfy all of the elements for organizational standing and cannot satisfy all of the elements for associational standing specifically for its NYCHRL and NYSHRL claims, WDOMI only has standing to pursue its ADA claim.
II. Enforcement of Arbitration Clause
Defendant next argues that the arbitration waiver in its terms of Service ("TOS") applies to Plaintiffs' claims under the direct benefits estoppel doctrine, even though Plaintiffs did not sign up for Defendant's application or agree to the TOS. (Def.'s Mot. p. 8.) Defendant's TOS "explicitly states that the claims subject to arbitration include claims alleging discrimination and claims under the ADA." (Id. p. 9.) Non-signatories can be bound to arbitration agreements under five distinct theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." Am. Bureau of Shipping v. Tencara Shipyard S.P.A. , 170 F.3d 349, 352 (2d Cir. 1999). Defendant moves to dismiss under the estoppel theory, which states, "A party is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause." Am. Bureau of Shipping , 170 F.3d at 353.[4] Benefits *260 may be direct, meaning coming directly from the agreement, or they may be indirect in that the non-signatory "exploits the contractual relation of parties to the agreement, but does not ... [assume] the agreement itself." Boroditskiy v. European Specialties LLC , 314 F.Supp.3d 487, 495 (S.D.N.Y. 2018) (quoting MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC , 268 F.3d 58, 61 (2d Cir. 2001) ).
However, Plaintiffs here have not received a benefit from Defendant's TOS; that is the whole problem. Plaintiffs' entire claim is that they are unable to benefit from Defendant's services due to Defendant's failure to accommodate their disabilities. (Compl. ¶¶ 103, 107 & 109.) It seems supremely unjust to hold individuals to an arbitration clause buried in the verbiage of a terms of service of agreement for a service that they did not sign up for, particularly when those individuals have not received any benefits from the agreement, direct or indirect. Courts have upheld arbitration agreements in terms of service contracts because the plaintiffs were presented with the opportunity to review the terms in the form of a hyperlink before signing up for the service. See Bassett v. Elec. Arts Inc. , 13-CV-4208(MKB)(SMG), 2015 WL 1298644, at *4 (E.D.N.Y. Feb. 9, 2015) ; Fteja v. Facebook, Inc. , 841 F.Supp.2d 829, 839 - 40 (S.D.N.Y. 2012). Unlike the plaintiffs in those cases, Plaintiffs here did not sign up for Defendant's service and do not allege that they were ever presented with the TOS to review. Requiring Plaintiffs to arbitrate under the TOS would hold them to an arbitration clause in an agreement they neither signed up for nor benefited from, and therefore direct benefits estoppel does not apply.
Because Plaintiffs have not agreed to Defendant's TOS and are not otherwise estopped from avoiding the arbitration agreement in the TOS, the Court will analyze whether Plaintiffs plausibly establish violations under the ADA, NYSHRL, and NYCHRL.
III. Plaintiffs' Civil Rights Claims
A. Title III ADA
According to Defendant, Plaintiffs fail to state a plausible claim for relief because "the only relief they seek-that the Court order Lyft to provide WAVs-is not available as a matter of law." (Def.'s Mot. p. 20.) However, as Plaintiffs acknowledge, the Amended Complaint does not include a specific request that Defendant be required to provide WAVs but does request that the Defendant be required to "develop and implement a remedial plan to ensure full and equal access to its services." (Compl. p. 28) (Pls.' Opp'n pp. 17 - 18.)
Whether the Court has the authority to require Defendant to provide WAVs is irrelevant at this stage. On a *261 motion to dismiss, the Court must only determine whether Plaintiffs stated a claim for relief that is plausible on its face and is obligated to draw all reasonable inferences in Plaintiffs' favor. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Amended Complaint contains numerous factual allegations surrounding Defendant's failure to provide WAVs. However, Plaintiffs' request for relief is not that the Court require Defendant to provide WAVs but that the Court (1) declare that Defendant's policies and practices violate the ADA; (2) enjoin Defendant from further violations of the ADA; and (3) require that Defendant develop and implement a plan to ensure equal access to its services. (Compl. p. 28.) Drawing all reasonable inferences is Plaintiffs' favor, the Court interprets the allegations surrounding Defendant's deficient WAV offerings as support for Plaintiffs' claim that Defendant violates the ADA by discriminating against people with mobility disabilities and not as a request for relief. A request for injunctive relief requiring compliance with the ADA, such as Plaintiffs' request for relief, is sufficient to withstand a motion to dismiss. See Reed v. 1-800-Flowers.com , 327 F.Supp.3d 539, 550 - 51 (E.D.N.Y. 2018). Accordingly, the Court finds that Plaintiffs' have requested a form of relief which can be granted.
Defendant does not raise other grounds to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6). Assuming Defendant also moves to dismiss Plaintiffs' ADA claim for failure to plausibly allege each of the elements of the claim, the Court would still deny the motion to dismiss. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim for relief under Title III, a plaintiff must allege that (1) she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against her by denying her a full and equal opportunity to enjoy the defendant's services. Rosa v. 600 Broadway Partners, LLC , 175 F.Supp.3d 191, 198 - 99 (S.D.N.Y. 2016) (citing Camarillo v. Carrols Corp. , 518 F.3d 153, 156 (2d Cir. 2008) ).
Plaintiffs satisfy each element of an ADA claim based on the face of the Amended Complaint. First, they meet the first element of an ADA claim by plausibly alleging that they are individuals with disabilities within the meaning of the ADA. (Compl. ¶ 127.) Plaintiffs also satisfy the second element for the purposes of this motion to dismiss, that Defendant operates a public accommodation. Defendant disputes that it is a public accommodation in the business of transportation and a covered entity under Title III of the ADA, but Defendant acknowledges that Plaintiffs allege it is a transportation company and that the Court is required to accept Plaintiffs' allegations as true for the purpose of the motion to dismiss. (Def.'s Mot. p. 2); See 42 U.S.C. § 12181(7). The Amended Complaint states that Defendant operates a public accommodation. (Compl. ¶ 132.) If Plaintiffs' statements on the face of the Amended Complaint were not sufficient, the Court would still be unable to grant Defendant's motion to dismiss on the issue of whether Defendant is a public accommodation. It is premature to decide the question of whether a defendant is a public accommodation at the motion to dismiss phase. Nat'l Fed'n of the Blind of Cal. v. Uber Tech., Inc. , 103 F.Supp.3d 1073, 1083 (N.D. Cal. 2015) (denying the defendant's *262 motion to dismiss because more factual development was required to determine whether the defendant, Uber, was a public accommodation under the ADA); see Ramos v. Uber Tech., Inc. , No. 14-CA-502(XR), 2015 WL 758087, at *6 (W.D. Tex. Feb. 20, 2015) (denying the defendant's motion to dismiss and holding that the plaintiffs had not failed to prove that Lyft and Uber offer public accommodations under the ADA). Therefore, the Court will consider Defendant to be a covered entity under Title III of the ADA for the purposes of this motion and finds that Plaintiffs have satisfied the second prong of the ADA analysis.
Finally, Plaintiffs state a facially plausible claim that Defendant discriminated against Plaintiffs by denying them a full and equal opportunity to enjoy Defendant's services based on their disabilities. In Lincoln Cercpac v. Health and Hospital Corp. , the court granted the defendant's motion to dismiss because the plaintiffs failed to allege that there was a service they were being denied or that they were being denied equal access to a service. 977 F.Supp. 274, 280 (S.D.N.Y. 1997). Unlike the plaintiffs in Lincoln Cercpac , Plaintiffs in this case allege that Defendant is denying them equal access to a service, specifically Defendant's transportation services, because of their disabilities. (Compl. ¶¶ 109 - 10, 136, 137.)
Thus, Plaintiffs' ADA claim survives Defendant's motion to dismiss, assuming Defendant also argues that Plaintiffs failed to plead a plausible ADA claim, because the Amended Complaint contains sufficient facts to plausibly support each element of that claim.
B. NYSHRL
Claims under the NYSHRL are analyzed using the same standards that apply to the ADA. Kemp v. Metro-North R.R. , 316 F. App'x 25, 26 (2d Cir. 2009). Accordingly, the three element test articulated in the Court's ADA analysis applies here. See Rosa , 175 F.Supp.3d at 198 - 99. As stated supra , for the purposes of this motion, there is no dispute that Plaintiffs are disabled within the meaning of the ADA or that Plaintiffs have plausibly alleged that Defendant is a public accommodation. Additionally, the Amended Complaint contains sufficient facts to plausibly support Plaintiffs' claim that Defendant discriminated against them by denying them a full and equal opportunity to enjoy its ridesharing services. (Compl. ¶¶ 109 - 10, 136, 137.) "Defendant denies individual [sic] who use motorized and other non-folding wheelchairs, including Plaintiff Lowell [and] WDOMI members ... full and equal enjoyment of Defendant's services." (Id. ¶ 137.)
Because Plaintiffs have stated a facially plausible claim for each of the required elements, Defendant's motion to dismiss the NYSHRL claim is denied.
C. NYCHRL
Courts "must analyze NYCHRL claims separately and independently from any federal and state law claims" and must construe NYCHRL provisions broadly and in favor of the plaintiff. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc. , 715 F.3d 102, 109 (2d Cir. 2013). In Snowden v. Trustees of Columbia University , the Second Circuit held that the district court properly dismissed a plaintiff's NYCHRL claim after conducting a separate analysis and focusing on the "broad and remedial" aspects of the NYCHRL. 612 F. App'x 7, 10 (2d Cir. 2015).
Under NYCHRL, it is unlawful for any owner of a place or provider of public accommodation to deny an individual full and equal enjoyment, on equal terms and conditions, of accommodations *263 or services based on an individual's disability. N.Y. City Admin Code §§ 8-107(4). Unlike in Westchester County, Defendant offers WAVs in New York City.[5] (Compl. ¶¶ 46 - 49). The issue is, according to Plaintiffs, that there are long wait times for WAVs in New York City for those individuals requiring WAVs because Defendant does not provide enough such vehicles. (Id. ¶ 49.) There is no case law to indicate that extended wait times for a public accommodation is a NYCHRL violation. While it is a NYCHRL violation to entirely exclude a person with a disability from accessing a public accommodation, see All Island Airport Serv., Inc. v. N.Y. State Div. of Human Rights , 127 A.D.3d 967, 968 (NY. App. Div. 2015), that is not the situation before the Court. Defendant offers, albeit in a small number, WAVs in New York City. Analyzing Plaintiffs' NYCHRL claims separately, and construing the provisions broadly, the Court finds that Plaintiffs failed to state a facially plausible claim under the NYCHRL because they did not plausibly allege a NYCHRL violation.
CONCLUSION
For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiffs' NYCHRL claim is GRANTED and Defendant's motion to dismiss Plaintiff WDOMI's NYSHRL claim is GRANTED. Defendant's motion to dismiss Plaintiffs' ADA claims and Plaintiff Lowell's NYSHRL claim is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 31. Defendant shall file its answer on or before December 20, 2018. The parties are directed to appear before this Court for an initial pre-trial conference on January 4, 2019 at 10:00 AM. The parties are also directed to confer, complete, and submit to the Court the attached amended case management plan before the initial pre-trial conference. This constitutes the Court's Opinion and Order.
SO ORDERED.
Attachment
*264 UNITED STATES DISTRICT COURT Rev Jen. 2012 SOUTHERN DISTRICT OF NEW YORK CIVIL CASE DISCOVERY PLAN Plaintiff(s), AND SCHEDULING ORDER - against - Defendant(s). ____ CV _________ (NSR)
This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):
1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)
2. This case [is] [is not] to be tried to a jury.
3. Joinder of additional parties must be accomplished by ______________________________.
4. Amended pleadings may be filed until _______________.
5. Interrogatories shall be served no later than ______________, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.
6. First request for production of documents, if any, shall be served no later than __________________.
7. Non-expert depositions shall be completed by _________________________.
a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.
b. Depositions shall proceed concurrently.
c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.
8. Any further interrogatories, including expert interrogatories, shall be served no later than ____________________________.
9. Requests to Admit, if any, shall be served no later than _________________________.
10. Expert reports shall be served no later than ________________.
11. Rebuttal expert reports shall be served no later than ____________.
12. Expert depositions shall be completed by ______________.
13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.
14. ALL DISCOVERY SHALL BE COMPLETED BY ________________________.
15. Any motions shall be filed in accordance with the Court's Individual Practices.
16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).
17. The Magistrate Judge assigned to this case is the Hon. __________.
18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.
19. The next case management conference is scheduled for _______________. at ___________. (The Court will set this date at the initial conference.)
SO ORDERED.
Dated: White Plains, New York ___________________________ ___________________________________________ Nelson S. Román, U.S. District Judge
*265 --------

Defendant cites to Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Associates, L.L.P. , which describes the doctrine as follows: "When a non-signatory plaintiff seeks the benefits of a contract that contains an arbitration provision, it is estopped from 'denying its obligation to arbitrate.' " 523 F. App'x 761, 763 (2d Cir. 2013) ; (Def.'s Mot. p. 9.) However, the majority of Second Circuit opinions, as well as opinions from other circuit courts, describe the requisite benefit under this doctrine as something that the plaintiff has already received, not something she seeks. Compare Hirsch v. Citibank, N.A. , 542 F. App'x 35, 37 (2d Cir. 2013) ; AICO Int'l, E.C. v. Merrill Lynch & Co. , 98 F. App'x 44, 46 (2d Cir. 2004) ; Specht v. Netscape Commc'ns Corp. , 306 F.3d 17, 39 (2d Cir. 2002) ; MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC , 268 F.3d 58, 61 (2d Cir. 2001) ; Am. Bureau of Shipping v. Tencara Shipyard S.P.A. , 170 F.3d 349, 353 (2d Cir. 1999) ; Reid v. Doe Run Res. Corp. , 701 F.3d 840, 846 (8th Cir. 2012) ; Pacific Unidata Ltd. v. Avon Prod. Inc. , 107 F. App'x 754, 755 (9th Cir. 2004) ; Bridas S.A.P.I.C. v. Turkmenistan , 345 F.3d 347, 361 - 62 (5th Cir. 2003) ; Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH , 206 F.3d 411, 418 (4th Cir. 2000), with Robinson Brog Leinwand Greene Genovese & Gluck P.C. , 523 F. App'x at 763 ; World Omni Fin. Corp. v. Ace Capital Re Inc. , 64 F. App'x 809, 812 (2d Cir. 2003). Because the majority of Second Circuit opinions support the latter definition and have not been overruled, the Court will proceed under that definition.

By enabling access mode in the Lyft application, users seeking rides in New York City have the option to hail a WAV. Lyft, https://help.lyft.eom/hc/en-us/articles/115013081668-Accessible-vehicle-dispatch (last visited Nov. 21, 2018). Courts may take judicial notice of publically available websites when the authenticity is not in dispute. See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC , 127 F.Supp.3d 156, 167 (S.D.N.Y. 2015) ; In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig. , 701 F.Supp.2d 356, 367-68 (E.D.N.Y. 2010). Parties do not dispute the authenticity of the Lyft application or website. (Def.'s Mot. p. 7); (Compl. ¶ 48 n.2.)